CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 15 2017

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

| | | |
|---|---|---|
| WCC CABLE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No.    5:17-CV-00052 |
| | ) | |
| v. | ) | |
| | ) | |
| G4S TECHNOLOGY LLC n/k/a | ) | By:    Michael F. Urbanski |
| G4S SECURE INTEGRATION, | ) | Chief United States District Judge |
| et al. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter comes before the court on a multitude of motions. Defendants G4S

Technology LLC ("G4S") and Liberty Mutual Insurance Company ("Liberty Mutual," and

collectively with G4S, "Defendants") have each filed a Motion to Stay, or in the Alternative,

Dismiss or Transfer, Based Upon the First-to-File Rule, ECF Nos. 19 & 25, and a Motion to

Transfer Venue Pursuant to 28 U.S.C. § 1404(a), ECF Nos. 21 & 27. The motions to stay

concerned litigation in the United States District Court for the District of Nebraska, G4S

Technology, LLC v. WCC Cable, Inc., 5:17-cv-00109-MFU (the "Nebraska Action").[1]

Additionally, Defendants have each filed a Motion to Dismiss for Failure to State a Claim,

ECF Nos. 23 & 29, each of which seeks dismissal of plaintiff WCC Cable, Inc's ("WCC")

Complaint, ECF No. 1 (the "Complaint" or "Compl."). On October 10, 2017, on a motion

---

[1] As the Nebraska Action has been transferred to this court, the court uses the docket number from this district, 5:17-cv-00109-MFU, except when citing the memorandum opinion transferring the Nebraska Action, for which the court cites to Westlaw. While the court cites to the docket in this district, as of the date of this Memorandum Opinion and the accompanying Order, all docket entries in the Nebraska Action, except for ECF No. 16, were originally filed in docket 8:17-cv-00182-LSC-MDN in the District of Nebraska.

by WCC, the District of Nebraska transferred the Nebraska Action to this court. See G4S Technology, LLC v. WCC Cable, Inc., 8:17CV182, 2017 WL 4564726 (D. Neb. Oct. 10, 2017). For the reasons set forth below, the court will sua sponte **CONSOLIDATE** this action with the Nebraska Action. The court will **GRANT** the motions to transfer venue, **DENY AS MOOT** the motions to stay, and declines to rule on the motions to dismiss, which may be taken up with the District of Nebraska.

## I.    Factual and Procedural Background

G4S entered into a contract with the Virginia Department of Transportation ("VDOT") for the design and construction of a traffic and safety management system for parts of Interstate 64 in Western Virginia (the "Project"). Compl. ¶ 7. G4S and WCC entered into a Subcontract Agreement (the "Subcontract"), ECF No. 1 Ex. A, under which WCC agreed to perform a portion of the work G4S was required to perform for VDOT. Compl. ¶ 9; Subcontract § 1 & Ex. A. The Subcontract contained a choice-of-law and forum-selection clause (the "Forum-Selection Clause"):

> This Subcontract shall be governed by the law of the State of Nebraska (other than its choice or conflict of laws provisions). Any dispute arising directly or indirectly from this Subcontract shall be resolved solely and exclusively in a state or federal court located in Douglas County, Nebraska.

Subcontract § 37. While the Subcontract generally appears to be G4S' form contract, the parties appear to have dickered certain terms. For instance, WCC negotiated an accelerated payment schedule, id. § 3(f), and, notwithstanding the Nebraska choice-of-law provision, incorporated Virginia Code § 2.2-4354's interest-payment provisions, id. § 3(a)2. The parties do not, however, appear to have negotiated the Forum-Selection Clause.

Further, G4S, as principal, and Liberty Mutual, as surety, entered into a Contract Payment Bond and Contract Performance Bond, ECF No. 1 Ex B. (the "Liberty Mutual Payment Bond"), for the benefit of VDOT and all parties providing labor and materials for the Project. The obligation of the Liberty Mutual Payment Bond is guaranteed jointly and severally by G4S and Liberty Mutual. The Liberty Mutual Payment Bond does not include a forum-selection clause.

Similarly, WCC, as principal, and Ironshore Indemnity, Inc. ("Ironshore"), as surety, entered into a Performance and Payment Bond, Complaint Ex. A at 49–51, 5:17-cv-00109-MFU (the "Ironshore Payment Bond"), for the benefit of G4S. The obligation of the Ironshore Payment Bond is guaranteed jointly and severally by WCC and Ironshore. The Ironshore Payment Bond does not contain a forum-selection clause.

The working relationship between WCC and G4S soured, with each side claiming the other side breached the Subcontract. Compare Compl. ¶¶ 14–39 (WCC allegations against G4S), with Complaint, 5:17-cv-00109-MFU, ECF No. 1 Ex. A, ¶¶ 9–14 (the "Nebraska Complaint") (G4S allegations against WCC). According to WCC, G4S improperly sent a "Notice to Cure," despite WCC performing all work as expeditiously as G4S' mandated working parameters would allow. Compl. ¶ 26. After sending the Notice to Cure, G4S continued to interfere improperly with WCC's work. Compl. ¶ 27. Finally, G4S sent WCC a "Notice of Default and Bond Claim," to which WCC promptly objected. Compl. ¶¶ 28–29.

In late 2016, WCC asked G4S to meet in person "in an attempt to avoid protracted legal action." Mem. Opp. G4S' Mot. Stay, ECF No. 32, at 2. G4S agreed, and while the meeting was initially set for January 25, 2017, on January 20, 2017, counsel for G4S asked to

postpone the meeting for thirty days, while claiming the delay "was not an intentional delay tactic." Id. at 2–3. The parties rescheduled the meeting for March 9, 2017. Id.

On March 6, 2017, counsel for G4S confirmed the details of the March 9, 2017 meeting. Id. at 3. Two hours later on the same day, G4S filed the Nebraska Action against WCC and Ironshore in the District Court of Douglas County, Nebraska, yet did not reveal its preemptive filing at the March 9, 2017 meeting. Id. Instead, G4S only revealed it had filed the lawsuit on May 1, 2017. Id. WCC filed its own Complaint in this court on May 25, 2017, setting off the litany of motions before the court.

## II.    The Nebraska Action

A month after G4S revealed it filed the Nebraska Action, WCC and Ironshore removed the action to the United States District Court for the District of Nebraska. Notice of Removal, 5:17-cv-00109-MFU, ECF No. 1. WCC moved to dismiss the Nebraska Complaint on two grounds: improper venue and lack of personal jurisdiction, while Ironshore moved to dismiss under Federal Rule of Civil Procedure 19(b). Motion to Dismiss, 5:17-cv-00109-MFU, ECF No. 6.

WCC first argued that 28 U.S.C. § 1391(b) did not provide for proper venue in Nebraska. None of the Nebraska defendants were incorporated or headquartered in Nebraska, and the events at issue all took place within the Western District of Virginia. Id. at 5. Under this set of facts, WCC argued that venue was only proper the Western District of Virginia, and certainly not proper in the District of Nebraska. Id.

WCC next proceeded to argue that the Forum-Selection Clause was invalid. Id. at 6–8. WCC contended that since the Forum-Selection Clause is invalid, the District of Nebraska

lacked jurisdiction over WCC. Id. at 9. This argument in large part mirrored WCC's venue

discussion in the present Section 1404(a) motions, which the court will analyze below.

G4S admitted that venue was not proper in the District of Nebraska. See Plaintiff's

Brief in Response to Defendants' Motion to Dismiss ("Neb. Opp."), 5:17-cv-00109-MFU,

ECF No. 11, at 13. G4S argued that even if venue were improper in the District of

Nebraska, the Forum-Selection Clause would mandate that the action be brought in a court

in Douglas County, Nebraska. Citing Atlantic Marine Construction Co. v. United States

District Court for the Western District of Texas, --- U.S. ---, 134 S. Ct. 568, 581 (2013), G4S

contended that, notwithstanding Section 1391(b), the District of Nebraska "must enforce a

forum selection clause to protect[ the parties'] legitimate expectations and further vital

interests of the justice system." Neb. Opp. at 13 (internal quotations omitted) (quoting Atl.

Marine, 134 S. Ct. at 581). To this end, relying on Servpro Industries, Inc. v. JP Penn

Restoration Services, No. 3-16-0298, 2016 WL 5109947 (M.D. Tenn. Sept. 20, 2016), G4S

claimed that WCC necessarily waived its objections to venue by agreeing to the Forum-

Selection Clause. Neb. Opp. at 15.

The District of Nebraska rejected G4S' arguments. The District of Nebraska found

Servpro distinguishable, as, unlike the contract in Servpro, the Subcontract did not contain

an express venue-waiver clause. G4S Tech., 2017 WL 4564726, at *3. Instead, the District of

Nebraska found Atlantic Marine to be on point: "An application of Servpro's holding in

situations where there is no express waiver of objections to venue would allow virtually all

forum-selection clauses to override the § 1391 venue analysis—precisely what Atlantic

Marine prohibits." Id. The District of Nebraska held that Atlantic Marine required venue to

be analyzed under Section 1391(b), and "[t]he presence of a forum-selection clause has no bearing on the propriety of venue." Id. at *2.

Because venue was not proper under Section 1391(b), the District of Nebraska transferred the Nebraska Action to this court. Id. at *3. The District of Nebraska held open the possibility that this court may, after undertaking a Section 1404(a) analysis, determine that a transfer of the Nebraska Action back to the District of Nebraska would be appropriate. Id.

### III.   Consolidation

When "actions before the court involve a common question of law or fact," Federal Rule of Civil Procedure 42 allows the court to "consolidate the actions." Fed. R. Civ. P. 42(a)(2). Consolidation is a "managerial device" that "makes possible the streamlined processing of groups of cases, often obviating the need for multiple lawsuits and trials." 8 Moore's Federal Practice § 42.10[1][a]. The court has wide discretion to consolidate actions. A/S J. Ludwig Mowinckles Rederi v. Tidewater Constr. Co., 559 F.2d 928, 933 (4th Cir. 1977). That discretion extends to consolidating actions sua sponte. 8 Moore's Federal Practice § 42.10[2][a]–[b]; see also Beach Mart, Inc. v. L & L Wings, Inc., Nos. 2:11-CV-44-F & 2:14-CV-52-F, 2014 WL 4635450, at *1 (E.D.N.C. Sept. 15, 2014) (consolidating cases sua sponte).

When exercising its discretion to consolidate, the court must consider:

whether the specific risks of prejudice and possible confusion were overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

Arnold v. E. Air Lines, Inc., 681 F.2d 186, 193 (4th Cir. 1982); see also Antoine v. Amick Farms, LLC, Civ Nos. ELH-16-2444 & ELH-16-2938, 2017 WL 68646, at *14 (D. Md. Jan. 6, 2017) (consolidating actions after considering "duplication of discovery" and "trial testimony," "conserv[ation] [of] judicial resources, . . . reduc[tion] [of] expenses associated with trial," and the "inconvenience to witnesses for both sides").

As the Nebraska Action has been transferred to this court, the court now has before it two actions that involve the same ultimate sets of facts, law, and witnesses. G4S' Nebraska Complaint reads like a counterclaim to WCC's Complaint. Discovery and trial testimony in the two actions will almost assuredly be duplicative, as, at base, both this action and the Nebraska Action ask the same question: Which party, if either, breached the Subcontract? Not only do the two actions "present a common question of either law or fact," Fed. R. Civ. P. 42(a), all or nearly all questions of law or fact are shared between the two actions.

On the one hand, because "the cases constitute mirror images of one another," the court finds that there is no risk of prejudice or confusion if the cases are consolidated. Certain Interested Underwriters Subscribing to Policy No. B1262P20017013 v. Am. Realty Advisors, Nos. 5:16-CV-940-FL & 5:17-CV-74-FL, 2017 WL 1331245, at *2 (E.D.N.C. Apr. 11, 2017). On the other hand, if the court does not consolidate the cases, there will exist a significant risk that the parties will be subject to inconsistent adjudication of the same issues, duplicative discovery (and costs incurred in discovery), and a waste of the judicial system's time and money. See id. The court therefore finds that this case should be consolidated with the Nebraska Action for all purposes.

The question remains how the court should treat the dueling complaints. Consolidation "does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." Johnson v. Manhattan Ry. Co., 289 U.S. 479, 496–97 (1933); see also Intown Props. Mgmt., Inc. v. Wheaton Van Lines, Inc., 271 F.3d 164, 168 (4th Cir. 2001) (applying Johnson). "It is generally accepted that consolidated cases 'retain their separate characters.'" Yelverton v. Edmundson, Nos. 5:15-CV-00134-F & 5:16-CV-00031-F, 2017 WL 414175, at *1 (E.D.N.C. Jan. 30, 2017) (quoting Ramirez-Rodriguez v. Wal-Mart Stores E., L.P., No. 5:12-CV-585-BO, 2013 WL 5885459, at *2 (E.D.N.C. Oct. 31, 2013)); see also Am. Realty Advisors, 2017 WL 1331245, at *2. Yet, other than the identity of the bondholders in the each action, it is difficult to identify what the "separate character" of each action is. As the court has already noted, each complaint is essentially a mirror of the other complaint. It is clear that in the absence of dueling complaints in dueling actions, G4S' claims against WCC in the Nebraska Action would otherwise be compulsory counterclaims in this action, and WCC's claims against G4S in this action would otherwise be compulsory counterclaims in the Nebraska Action. See Fed. R. Civ. P. 13(a).

Additionally, the court is cognizant that it can order consolidated pleadings and appoint one of the parties as plaintiff in the consolidated action. While the court will ultimately hold that Nebraska is the only proper forum for this action, the court expresses its deep concern about G4S' litigation tactics in Nebraska. From the record before the court, it appears that G4S misled WCC into thinking G4S was a willing partner in settlement negotiations when, in fact, G4S purposefully engaged in dilatory tactics to gain an unfair

advantage in the dispute. Further, it appears that G4S deliberately withheld the existence of the Nebraska Action. On March 6, 2017, G4S filed the Nebraska Action a scant two hours after confirming the details of the March 9, 2017 meeting with WCC. G4S made no mention of an anticipated filing. Nor did G4S reveal the already-filed Nebraska Action to WCC at the March 9, 2017 meeting. The court refuses to condone G4S' actions.

With this in mind, the court appoints WCC as plaintiff and construes its Complaint as the lead complaint in the consolidated action. The court construes G4S' Nebraska Complaint as a counterclaim in the consolidated action. See Norfolk & W. Ry. Co. v. Bhd. of R.R. Signalmen, 164 F.3d 847, 851 (4th Cir. 1998) (noting that related cases were consolidated and the original claims of one consolidated defendant "were taken as a counterclaim" in the consolidated action); see also Norfolk & W. Ry. Co. v. Bhd. of R.R. Signalmen, 11 F. Supp. 2d 833, 836 (W.D. Va. 1998) ("That action was subsequently transferred to this Court, docketed . . . , and consolidated with the instant case . . . as a compulsory counterclaim to plaintiff railroads' complaint."), rev'd in part on other grounds, 164 F.3d 847 (1998).

As provided for in the accompanying order, this action and the Nebraska Action shall proceed for purposes of discovery, dispositive motions, and trial under one consolidated case number, 5:17-cv-00052 (the "Consolidated Action"). Given the present posture of the case, the following parties are parties to the Consolidated Action:

- WCC, as plaintiff and counter-defendant;
- G4S, as defendant and counter-plaintiff;
- Liberty Mutual, as defendant; and
- Ironshore, as third-party defendant.

## IV. Venue and Forum Statutes

The parties' disagreements on the motions to transfer ultimately involve the interplay between three statutes: 28 U.S.C. § 1391(b), 28 U.S.C. § 1406(a), and 28 U.S.C. § 1404(a). Section 1391 governs proper venue, and provides:

A civil action may be brought in—

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Section 1391(b) does not take the presence of a forum-selection clause into account. See Atl. Marine, 134 S. Ct. at 577 ("Whether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b).").

Section 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). A court may only invoke Section 1406(a) when venue is "wrong" under Section 1391(b)—that is, "a district other than 'those districts in which Congress has provided by its venue statutes that the action may be "brought.""" Atl. Marine, 134 S. Ct. at 578 (quoting Van Dusen v. Barrack, 376 U.S. 612, 618 (1964)).

Finally, Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Section 1404(a) is broader than Section 1406(a), and allows a court to transfer a case "to any other district where venue is proper . . . or to any district to which the parties have agreed by contract or stipulation." Atl. Marine, 134 S. Ct. at 579.

## V.     The Forum-Selection Clause

Defendants base their motions to transfer solely on the Forum-Selection Clause. As the District of Nebraska determined, this district is the only district in which a substantial part of the events underlying this suit occurred. G4S Tech., 2017 WL 4564726, at *2. In the absence of the Forum-Selection Clause, it is unquestionable that the Consolidated Action should be heard here. It follows that if the Forum-Selection Clause is invalid, as WCC suggests, then Defendants' motions to transfer necessarily fail. The court finds, however, that the Forum-Selection Clause is valid.[2]

### A.     Enforceability of Forum-Selection Clause

Forum-selection clauses have historically been disfavored. See M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 9 (1972). The Bremen, which instructed federal courts to recognize forum-selection clauses as "prima facie valid and [to] be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances," marked a sea change in federal law. Id. at 10. This is because "enforcement of valid forum-

---

[2] Courts distinguish between permissive and exclusive forum-selection clauses. See Albemarle Corp. v. AstraZeneca UK Ltd., 628 F.3d 643, 650–51 (4th Cir. 2010). The court would not be required to transfer the Consolidated Action unless the Forum-Selection Clause is exclusive. WCC, however, does not contest that the Forum-Selection Clause is exclusive.

selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." Stewart Org. v. Ricoh Corp., 487 U.S. 22, 33 (1988) (Kennedy, J., concurring).

The Bremen recognized that an otherwise-valid forum-selection clause may be invalidated if it is unreasonable. Interpreting the Supreme Court's analysis in The Bremen, the Fourth Circuit has identified four factors that may render a forum-selection clause invalid:

> (1) [its] formation was induced by fraud or overreaching; (2) the complaining party "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) [its] enforcement would contravene a strong public policy of the forum state.

Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996) (citations omitted). Any of these factors, standing alone, is sufficient to invalidate a forum selection clause.[3]

The Bremen and its progeny left open the question of what law—federal or state—governs the validity of a forum-selection clause. Like most of its sister circuits, the Fourth Circuit has answered with the former: "[A] federal court interpreting a forum selection clause must apply federal law in doing so." See Albemarle Corp. v. AstraZeneca UK Ltd., 628 F.3d 643, 650 (4th Cir. 2010).

Venue "is a procedural matter that is governed by federal rule and statutes." Id. A forum-selection clause "changes the default venue rules applicable to the agreement." Id.

---

[3] While The Bremen sounded in admiralty, courts have applied the Bremen factors to analyze forum-selection clauses generally. See, e.g., Albemarle Corp. v. AstraZeneca UK Ltd., 628 F.3d 643, 650 (4th Cir. 2010); see also Stewart Org., 487 U.S. at 33 (Kennedy, J., concurring) ("Although our opinion in The Bremen v. Zapata Off-Shore Co. involved a Federal District Court sitting in admiralty, its reasoning applies with much force to federal courts sitting in diversity." (internal citation omitted)).

Because a forum-selection clause is "an agreement purporting to modify or waive the venue of a federal court," it "implicates what is recognized as a procedural matter governed by federal law—the proper venue of the court." Id. Accordingly, a federal court in the Fourth Circuit must "apply federal law and in doing so, give effect to the parties' agreement." Id. (collecting cases and applying majority rule).

While recognizing that the court must analyze the reasonableness of the Forum-Selection Clause against the Bremen factors, WCC also contends that "forum selection clauses are not enforceable when they establish a forum in which venue does not exist under 28 U.S.C. § 1391(b)." Mem. Opp. G4S' Mot. Transfer Venue (the "Opposition" or "Opp. Transfer"), ECF No. 33, at 4. As detailed below, WCC conflates the relevance of a forum-selection clause to Section 1391(b), which determines whether a court may exercise venue over an action, with the relevance of a forum-selection clause to Section 1404(a), which governs transfer of venue by a court that properly has venue under Section 1391(b). For now, it suffices to say that the three cases WCC cites for this argument all concern examination of venue under 28 U.S.C. § 1391(b), and are therefore irrelevant to the analysis here. See Howmedica Oseteonics Corp. v. DJO Global, Inc. (Howmedica I), Civ. No. 16-2330, 2017 WL 1136671, at *5 (D.N.J. Mar. 27, 2017) (analyzing venue under Section 1391(b)); Corp. Air, LLC v. Davis, No. 2:13-cv-729, 2014 WL 516582, at *2–3 (W.D. Pa. Feb. 7, 2014) (same); Prosperity Bank v. Balboa Music Festival, LLC, No. 4:13-CV-00288, 2014 WL 1023935, at *3 (S.D. Tex. Mar. 13, 2014) (same).

Nor does Virginia Code § 8.01-262.1(A) inform the court's decision, even assuming that Virginia, and not Nebraska, law applies.[4] The court does not doubt that a Virginia state court would apply Virginia law if the parties were in state court. See, e.g., Colonna's Shipyard, Inc. v. Alpha Pipe Co., No. CL11-8103, 2012 WL 6755957 (Va. Cir. Ct. Aug. 27, 2012) (finding that an attempt to invalidate a forum selection clause based on "certain enumerated types of contracts related to construction" in § 8.01-262.1(A) "would be well-founded"). Instead, the court has diversity jurisdiction and the parties are in federal court.

Even assuming that the court should apply Virginia law instead of Nebraska law,[5] state law is irrelevant: Albemarle requires the court to interpret the Forum-Selection Clause under federal law, and the court must enforce the Forum-Selection Clause unless one of the four Bremen factors applies, irrespective of whether a state court would invalidate the Forum-Selection Clause.

## B.     Strong Public Policy

Conceding that the first three Bremen factors are inapplicable, WCC argues that Section 8.01-262.1(A) evinces the strong "public policy of Virginia to have disputes regarding its public projects be decided within the Commonwealth." Opp. at 6. WCC contends that Section 8.01-262.1(A) "is a common sense measure that ensures that Virginia public projects are considered in a forum with an actual nexus to the litigants and readily

---

[4] It is not immediately clear from the face of the Opposition if WCC is arguing that (1) Virginia Code § 8.01-262.1(A) voids the Forum-Selection Clause ab initio; (2) Virginia Code § 8.01-262.1(A) establishes a strong public policy sufficient for the court to find that the Forum-Selection Clause is unreasonable under The Bremen; or (3) both. While the bulk of WCC's arguments focus on public policy, there is some suggestion that WCC wants the court to interpret the Forum Selection Clause under Virginia law and find it void.

[5] The parties disagree whether Virginia or Nebraska law would apply. As discussed later, the court believes it would have to apply Nebraska law.

available to public officials involved with the project, the project site, and the evidence." Id. at 7.

WCC bases this argument on the Commonwealth of Virginia's "right and authority to regulate contracts and to constrain parties' freedoms thereunder." Id. To this end, WCC insists that Section 8.01-262.1(A) "does not contravene any supreme federal law or statute." Id. The problem for WCC is that the Fourth Circuit has foreclosed this argument.

### 1.   Albemarle

In Albemarle, Ablemarle entered into a contract with AstraZeneca, under which Albemarle would manufacture products at its South Carolina plant for AstraZeneca. Albemarle, 628 F.3d at 645. The contract contained forum-selection and choice-of-law clauses designating both English law and an English forum. Id. at 646. After AstraZeneca's purported breach of contract, Albemarle filed suit in the District of South Carolina. Id. The district court granted AstraZenca's motion to dismiss the case for improper venue. Id.

On appeal, Albemarle argued that "enforcement of the forum selection clause would violate a strong public policy of South Carolina." Id. at 651. South Carolina Code § 15-7-120(A), which expressed "South Carolina's disfavor of [forum-selection] clauses," read:

> Notwithstanding a provision in a contract requiring a cause of action arising under it to be brought in a location other than as provided in this title and the South Carolina Rules of Civil Procedure for a similar cause of action, the cause of action alternatively may be brought in the manner provided in this title and the South Carolina Rules of Civil Procedure for such causes of action.

Id. at 651–52; S.C. Code Ann. § 15-7-120(A). The Fourth Circuit interpreted this statute to "make[] all forum selection clauses permissive," which "would overrule the forum selection clause" in Albemarle. Albemarle, 628 F.3d at 652.

15

The Fourth Circuit rejected Albemarle's contention that its forum-selection clause contravenes a strong public policy of South Carolina on four separate grounds. First, "insofar as the South Carolina statute would purport to impose South Carolina procedural rules on a federal court, it would be preempted by federal law." Id. Instead, Congress regulates venue through Section 1391(b), "and to the extent that a forum selection clause is invoked to change venue, federal law applies." Id.

Second, The Bremen considered and rejected "state reluctance to recognize and enforce forum selection clauses" as strong public policy. Id. In particular, The Bremen disapproved of the "provincial attitude regarding the fairness of other tribunals." The Bremen, 407 U.S. at 9. To the contrary, The Bremen mandates that "in federal court, forum selection clauses enjoy a presumption of enforceability." Albemarle, 628 F.3d at 652.

Third, the Fourth Circuit found no evidence that South Carolina Code § 15-7-120(A) manifested a strong public policy of South Carolina. See id. In particular, the Fourth Circuit noted that both South Carolina state and federal courts had enforced forum-selection clauses in South Carolina contracts despite South Carolina Code § 15-7-120(A). Id. (collecting cases).

Finally, the Fourth Circuit held that "it can hardly be a strong public policy to countermand the very policy that the Supreme Court adopted in The Bremen." Id. The Fourth Circuit refused to countenance allowing state law to neuter The Bremen by "overrid[ing] the federal policy of favoring a contractual choice of forum." Id.

## 2.    Application

Section 8.01-262.1(A) runs afoul of <u>Albemarle</u> for much the same reason as did South Carolina Code § 15-7-120(A). On the first <u>Albemarle</u> ground, WCC would have the court apply Section 8.01-262.1(A) to a federal case. The court is forced to conclude that the Fourth Circuit would hold that Section 8.01-262.1(A), as a statute that purports to govern the proper forum of certain actions, cannot be used to force Virginia "procedural rules on a federal court." <u>Albemarle</u>, 628 F.3d at 652.

On the second <u>Albemarle</u> ground, the court notes that <u>The Bremen</u> rejected WCC's contention that "state reluctance to recognize and enforce forum selection clauses" can constitute a strong public policy. <u>The Bremen</u>, 407 U.S. at 9. Similarly, on the fourth <u>Albemarle</u> ground, the Fourth Circuit held that "it can hardly be a strong public policy to countermand the very policy that the Supreme Court adopted in <u>The Bremen</u>," <u>Albemarle</u>, 628 F.3d at 652, which is what Section 8.01-262.1(A) purports to do. The court, after considering Section 8.01-262.1(A) in light of <u>Albemarle</u>, concludes that that statute cannot provide the strong state public policy necessary to find the Forum-Selection Clause unreasonable under <u>The Bremen</u>.[6]

## 1.    Other Public Policy Cases

In urging a contrary conclusion, WCC makes three arguments. First, WCC cites a litany of cases that WCC claims "recognize that a statute that renders forum selection clauses void with respect to a targeted type of case or contract demonstrates a strong public policy

---

[6] As discussed more fully below, the court cannot find that the third <u>Albemarle</u> ground is met. This does not, however, change the court's ultimate conclusion that Section 8.01-262.1(A) is not a strong public policy under <u>The Bremen</u>, as the court does not interpret <u>Albemarle</u> as requiring that all four grounds be met. Instead, the court interprets the each ground as sufficient, but not necessary, to find that a state forum-selection statute is not a strong public policy under <u>The Bremen</u>. <u>See Albemarle</u>, 628 F.3d at 652 ("We reject Albemarle's public policy argument at several levels.").

meeting the exception to enforcement established by the federal common law." Opp. at 8; see id. at 8–9 (citing cases).

Three of WCC's cases are from state or territorial courts. See Vita Planning & Landscape Architecture, Inc. v. HKS Architects, Inc., 240 Cal. App. 4th 763 (Cal. Ct. App. 2015); Michels Corp. v. Rockies Express Pipeline, L.L.C., 34 N.E.3d 160 (Ohio Ct. App. 2015); Neon Constr. Enters., Inc. v. Int'l Bonding & Constr. Servs., Inc., No. ST-11-CV-13, 2012 WL 3111748 (V.I. Super. Ct. July 25, 2012). If this case were in state court, that court would presumably be free to enforce Section 8.01-262.1. See Colonna's Shipyard, 2012 WL 6755957. But since the parties are in federal court, these cases are irrelevant to the issue at hand. The problem with a federal court enforcing a state-law prohibition on forum-selection clauses is that proper forum and venue "procedural matter[s] that [are] governed by federal rule and statutes." Albemarle, 628 F.3d at 650. In federal court, state-law forum-selection statutes are "preempted by federal law." Id. at 652. These three cases are inapposite.

Next, WCC cites two non-Seventh Circuit cases issued before Atlantic Marine. See Gem Mech. Servs., Inc. v. DV II, LLC, C.A. No. 12-93-M, 2012 WL 2312095 (D.R.I. June 18, 2012); E. Cornell Malone Corp. v. Sisters of the Holy Family, St. Mary's Academy of the Holy Family, Civ. No. 12-0361, 2012 WL 1886055 (E.D. La. May 23, 2012). As the court discusses below, Atlantic Marine further enhanced the burden a party seeking to avoid a forum-selection clause must meet. These two cases predate Atlantic Marine and could not have taken its holding into account. Further, while both Gem Mechanical Services and E. Cornell Malone decided that the respective state forum-selection bars represented strong public policies under The Bremen, the analysis supporting these conclusions is cursory, at

best. See Gem Mech. Servs., 2012 WL 2312095, at *2 (two paragraphs); E. Cornell Malone, 2012 WL 1886055, at *3 (similar); cf. Bowen Eng'g, Corp. v. Pac. Indemn. Co., 83 F. Supp. 3d 1185, 1193 & n.5 (D. Kan. 2015) (holding that the analogous Kansas forum-selection ban was not strong public policy and finding that Gem Mechanical Services and E. Cornell Malone, among other cases, "reached different conclusions, but generally without extended discussion"). To the extent that Gem Mechanical Services and E. Cornell Malone remain good law after Atlantic Marine, the court respectfully disagrees with their analysis.

Finally, WCC cites a string of cases from courts in the Seventh Circuit. See Harding Materials, Inc. v. Reliable Asphalt Prods., Inc., No. 1:16-cv-02681-JMS-MJD, 2017 WL 495787 (S.D. Ind. Feb. 6, 2017); Pirson Contractors, Inc. v. Scheuerle Fahrzeugfabrik GmbH, No. 2:07 cv 123, 2008 WL 927645 (N.D. Ind. Apr. 3, 2008); E & J Gallo Winery v. Morand Bros. Beverage Co., 247 F. Supp. 2d 973 (N.D. Ill. 2002); McCloud Constr., Inc. v. Home Depot USA, Inc., 149 F. Supp. 2d 695 (E.D. Wis. 2001). Only Harding Materials postdates Atlantic Marine, but the court is not certain that Atlantic Marine would have changed the outcome in the other three cases. The Seventh Circuit, unlike most other circuits, requires that its district courts use state law to interpret the validity of a forum-selection clause. See Abbot Labs. v. Takeda Pharm. Co., 476 F.3d 421, 423 (7th Cir. 2007) ("Simplicity argues for determining the validity and meaning of a forum selection clause . . . by reference to the law of the jurisdiction whose law governs the rest of the contract in which the clause appears, rather than making the court apply two different bodies of law [i.e., federal and state] to the same case." (internal citations omitted)). The Seventh Circuit is in the minority, however. See Wong v. PartyGaming Ltd., 589 F.3d 821, 827 (6th Cir. 2009)

(collecting cases and describing the Seventh Circuit's position as the minority position). Irrespective of the court's view of which law should apply to the Forum-Selection Clause,[7] Albemarle requires the court to use federal law to determine the validity of the Clause.[8] WCC's Seventh Circuit cases are not relevant to that analysis. Ultimately, none of WCC's cases compels the court to find that Section 8.01-262.1 is a strong public policy under The Bremen.

## 2. Differences Between Section 8.01-262.1 and South Carolina § 15-7-120(A)

Second, WCC attempts to differentiate Section 8.01-262.1 from the South Carolina statute at issue in Albemarle. South Carolina Code § 15-7-120(A), WCC insists, was "merely permissive, or, in other words, voidable at will." Opp. at 10. From this difference, WCC infers that South Carolina Code § 15-7-120(A) "was not 'similar' to" Section 8.01-262.1(A). Id. (citation omitted). Additionally, WCC contends that the Fourth Circuit "found that South

---

[7] While the Seventh Circuit position is the minority position among the circuits, "it has substantial academic opinion behind it." Stephen E. Sachs, Five Questions After Atlantic Marine, 66 Hastings L.J. 761, 768 (2015) (collecting articles).

[8] Even if the court were to ignore Albemarle's binding mandate and apply the Seventh Circuit's view, Section 8.01-262.1 would not invalidate the Forum-Selection Clause. In a subsequent case, the Seventh Circuit determined that "[i]n contracts containing a choice of law clause . . . , the law designated in the choice of law clause would be used to determine the validity of the forum selection clause." Jackson v. Payday Fin., LLC, 764 F.3d 765, 775 (7th Cir. 2014). The Subcontract contains a choice-of-law clause calling for the Subcontract to be interpreted under Nebraska law. As noted above, Section 8.01-262.1 does not purport to invalidate choice-of-law provisions, so the court would apply Nebraska law.

WCC suggests that Nebraska Revised Statute § 45-1209 would also invalidate the Forum-Selection Clause, Opp. at 7 n.1, but the court disagrees. Nebraska Revised Statute § 45-1209 only purports to invalidate forum-selection clauses that "require that the venue for a court or arbitration hearing be held at any location outside [Nebraska]," where the contract is "for construction work performed within the State of Nebraska." It does not purport to invalidate forum-selection clauses for construction contracts performed in other states; even if it did, the court does not perceive any strong public policy reason for Nebraska to do so. To the contrary, because the contract was formed under Nebraska law, it seems that Nebraska public policy would be to enforce the Forum-Selection Clause, as Nebraska "has an interest in 'protecting the bargained-for rights and expectations of its residents,'" including G4S. Global Quality Foods, Inc. v. Van Hoekelen Greenhouses, Inc., No. 16-cv-00920-LB, 2016 WL 4259126, at *8 (N.D. Cal. Aug. 12, 2016) (quoting Bridgemans Servs. Ltd. v. George Hancock, Inc., No. C14-1714JLR, 2015 WL 4724567, at *5 (W.D. Wash. Aug. 7, 2015)).

Instead, the Choice of Forum Act—Nebraska Revised Statute 25-414—appears to control. As discussed below, the court has reason to believe that the District of Nebraska would find that the Forum-Selection Clause and the designated Nebraska forum satisfy the Choice of Forum Act.

Carolina courts themselves had failed to apply the public policy pronounced by this statute . . . and, as a result, the statute did not manifest a 'strong public policy of South Carolina.'" Id. In essence, WCC's argument boils down to the claim that Section 8.01-262.1(A) does not satisfy the third Albemarle ground, and therefore must be a strong public policy sufficient to find the Forum-Selection Clause unreasonable under The Bremen. WCC is wrong, for multiple reasons.

In the third Albemarle ground, the Fourth Circuit surveyed South Carolina state and federal decisions and found no cases in which a South Carolina court found that South Carolina Code § 15-7-120(A) was a strong public policy of the state. See Albemarle, 628 F.3d at 652. Instead, the Fourth Circuit identified multiple South Carolina state cases in which courts "have enforced forum selection clauses in contracts, notwithstanding the existence of § 15-7-120(A)." Id.

The court has surveyed cases citing Section 8.01-262.1(A), and similarly has found no cases suggesting that the statute is a strong public policy of Virginia. To be sure, M.C. Construction Corp. v. Gray Co., a case from this district, held that Section 8.01-262.1 "expresses a policy that disputes arising from construction contracts which are to be performed in Virginia should be resolved in Virginia." 17 F. Supp. 2d 541, 546 (W.D. Va. 1998) (emphasis added). Nothing in the opinion suggests that Section 8.01-262.1 is a strong public policy, however. Additionally, M.C. Construction found that the Federal Arbitration Act preempted Section 8.01-262.1's bar on arbitrations in non-Virginia forums. The court interprets The Bremen, Albemarle, and Section 1404(a) as similarly preempting state laws purporting to void otherwise-valid forum-selection clauses in federal court.

Apart from M.C. Construction, the court has found only one other case from a Virginia court that discusses Section 8.01-262.1. In Colonna's Shipyard, a Virginia state court declined to find that Section 8.01-262.1 invalidated a forum-selection clause because claims did not fall under Section 8.01-262.1's ambit. See 2012 WL 6755957. On the one hand, the court has been unable to find any case indicating that Section 8.01-262.1 is (or is not) a strong public policy of Virginia, nor any case that applied Section 8.01-262.1 to invalidate a forum-selection clause. On the other hand, other than M.C. Construction, the court is also unable to find any case in which a Virginia court enforced a forum-selection clause notwithstanding Section 8.01-262.1. With this paucity of relevant law, the court cannot determine that the third Albemarle ground supports G4S. The court's conclusion on this point does not, however, affect the court's ultimate holding. Albemarle does not suggest that all grounds must be satisfied. See Albemarle, 628 F.3d at 652 ("We reject Albemarle's public policy argument at several levels."). Instead, the court interprets each Albemarle ground as an independently sufficient, but not necessary, condition to Albemarle's holding that a forum-selection statute is not a strong public policy under The Bremen. Because the court finds that because the first, second, and fourth Albemarle factors are satisfied, Section 8.01-262.1 cannot invalidate the Forum-Selection Clause.

### 3. Little Miller Act

Finally, WCC argues that enforcing the Forum-Selection Clause would run afoul of United States ex rel. Advance Concrete, LLC v. T.H.R. Enterprises, Inc., No. 2:15cv477, 2016 WL 3002408 (E.D. Va. May 19, 2016). As WCC admits, Advance Concrete was a case brought under the Little Miller Act. See Opp. at 9–10. Little Miller Act cases "must be

brought in the United States District Court for any district in which the contract was to be performed and executed, regardless of the amount in controversy," 40 U.S.C. § 3133(3), and it is not clear if the Fourth Circuit would "permit a forum selection clause to overrule the Miller Act's venue requirement." Advance Concrete, 2016 WL 3002408, at *4.

WCC raises no Little Miller Act claims. Instead, WCC pleads only state-law claims. As the court discusses below, Section 1404(a) requires the court to enforce a valid forum-selection clause in all but the most unusual circumstances. Since Section 1404(a) is controlling, and the Little Miller Act has no import, Advance Concrete is inapposite. In the end, WCC's arguments attempting to invalidate the Forum-Selection Clause fail. The court holds that, under Albemarle, the Forum-Selection Clause is valid and not unreasonable.

### C.    Sureties and the Forum-Selection Clause

The Bremen and Albemarle answer the question of whether G4S can enforce the Forum-Selection Clause against WCC. It does not answer the question of whether Liberty Mutual, as a surety of G4S, may enforce the Forum-Selection Clause against WCC, or whether G4S, as beneficiary of the Ironshore Payment Bond, may enforce the Forum-Selection Clause against Ironshore.

A surety's liability to a subcontractor is derivative of the contractor's liability to the subcontractor, or vice-versa. See United States ex rel. QSR Steel Corp., LLC v. Safeco Ins. Co. of Am., No. 3:14-cv-1017 (VAB), 2015 WL 4393576, at *7 (D. Conn. July 16, 2015); Artistic Stone Crafters v. Safeco Ins. Co. of Am., 726 F. Supp. 2d 595, 604 (E.D. Va. 2010). For this reason, a party seeking to recover against a surety, who stands in the shoes of the principal and whose liability is contingent upon a subcontract that contains a forum-selection

clause, may enforce that forum selection clause against the surety. See QSR Steel, 2015 WL
4393576, at *7. Additionally, the surety may assert most defenses that the contractor could
assert, including "lack of subject matter jurisdiction and such matters as the enforcement of
venue selection clauses or arbitration clauses that strip a court of jurisdiction over a dispute."
Attard Indus., Inc. v. U.S. Fire Ins. Co., No. 1:10cv121 (AJT/TRJ), 2010 WL 3069799, at *3
(E.D. Va. Aug. 5, 2010).

The story changes when the payment bond at issue has its own forum-selection
clause. "In cases where there are competing forum selection clauses, courts have determined
that the choice of forum clause in a bond, rather than a related contract, is controlling."
Attard Indus., Inc. v. U.S. Fire Ins. Co., No. 1:10CV121 AJT/TRJ, 2010 WL 1946319, at *2
(E.D. Va. May 10, 2010).

The Payment Bond does not contain a forum-selection clause. See Compl. Ex. B., at
1–2. For this reason, Liberty Mutual, as surety for G4S, may invoke the Forum-Selection
Clause in the Subcontract. Similarly, the Ironshore Payment Bond does not contain a forum-
selection clause. See Index in Support of Motion to Dismiss Ex. A to A1, at 49–51, 5:17-cv-
00109-MFU, ECF No. 8. Accordingly, G4S may invoke the Forum-Selection Clause in the
Subcontract against Ironshore.

## V.      Section 1404(a) Transfer

The Forum-Selection Clause is valid, and Defendants may enforce the Clause against
WCC and Ironshore. That leaves the question of how the Forum-Selection Clause should be
enforced. Appealing to Atlantic Marine, Defendants have filed motions to transfer under
Section 1404(a). Defendants are correct: Under Atlantic Marine, Section 1404(a) is the

proper mechanism for enforcing a forum-selection clause, and <u>Atlantic Marine</u> requires the court to transfer the Consolidated Action back to the District of Nebraska.

### 1. Section 1404(a) and <u>Atlantic Marine</u>

The facts of <u>Atlantic Marine</u> closely resemble the facts here. Atlantic Marine entered into a contract with the U.S. Army Corps of Engineers to perform construction work at Fort Hood, which is located in the Western District of Texas. <u>Atl. Marine</u>, 134 S. Ct. at 575. Atlantic Marine, in turn, entered into a subcontract with J-Crew Management for work on the project. <u>Id.</u> The subcontract contained a forum-selection clause that provided that all disputes "shall be litigated in the Circuit Court for the City of Norfolk, Virginia, or the United States District Court for the District of Virginia, Norfolk Division." <u>Id.</u> (citing <u>In re Atl. Marine Constr. Co.</u>, 701 F.3d 736, 737–38 (5th Cir. 2012)).

When a dispute arose, J-Crew ignored the forum-selection clause and sued Atlantic Marine in the Western District of Texas, where the work was performed. <u>Id.</u> at 576. Atlantic Marine moved to dismiss, arguing that venue was "'wrong' under § 1406(a) and 'improper' under Federal Rule of Civil Procedure 12(b)(3). In the alternative, Atlantic Marine moved to transfer the case to the Eastern District of Virginia under § 1404(a)." <u>Id.</u> The district court denied both motions.[9] <u>Id.</u> Atlantic Marine petitioned the Fifth Circuit for a writ of mandamus directing the district court to dismiss under Section 1406(a) or transfer under

---

[9] Like Section 8.01-262.1, Texas Code § 272.001 makes a forum-selection clause calling for a non-Texas forum in "a contract that is principally for the construction or repair of an improvement to real property located in [Texas] . . . voidable by the party obligated by the contract to perform the construction or repair." Tex. Bus. & Comm. Code § 272.001(a)–(b); <u>see also</u> <u>U.S. ex rel. J-Crew Mgmt., Inc. v. Atl. Marine Constr. Co.</u>, No. A-12-CV-228-LY, 2012 WL 8499879, at *2 (W.D. Tex. Aug. 6, 2012), <u>writ of mandamus denied sub nom.</u>, <u>In re Atl. Marine Constr. Co.</u>, 701 F.3d 736 (5th Cir. 2012), <u>rev'd and remanded sub nom.</u>, <u>Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.</u>, 134 S. Ct. 568 (2013). The district court in <u>Atlantic Marine</u> determined that Texas Section 272.001 did not apply because the project "concern[ed] a construction project entirely within [a] federal enclave." <u>J-Crew Mgmt.</u>, 2012 WL 8499879, at *3. For this reason, the Supreme Court did not need to decide whether federal venue statutes necessarily preempt state forum-selection statutes.

Section 1404(a), which the Fifth Circuit denied. Id. The Supreme Court granted certiorari. Id. at 577.

The Supreme Court first rejected the argument that a forum-selection clause can be enforced under Section 1406(a) and Federal Rule of Procedure 12(b)(3), as "those provisions say nothing about a forum-selection clause." Id. Section 1391(b) governs the question of "whether venue is 'wrong' or 'improper.'" Id. The Supreme Court found that "[w]hether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b)." Id.

Instead, Section 1404(a) provides the "mechanism for enforcement of forum-selection clauses that point to a particular federal district." Id. at 579. The Supreme Court's reasoning is clear. Unlike Section 1406(a), Section 1404(a) "does not condition transfer on the initial forum's being 'wrong.'" Id. Further, Section 1404(a) "permits transfer to any district where venue is also proper . . . or to any other district to which the parties have agreed by contract or stipulation." Id. In other words, while a party may only successfully invoke Section 1406(a) when the initial choice of venue is not proper under Section 1391, a party may successfully invoke Section 1404(a) when venue is improper or when the parties have contracted for a different forum.

Under most circumstances, a court must "consider four factors when deciding whether to transfer venue: (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc., 791 F.3d 436, 444 (4th Cir. 2015); see also Atl. Marine, 134 S. Ct. at 581 ("In the typical case not involving a

forum-selection clause, a district court considering a § 1404(a) motion (or a <u>forum non</u> <u>conveniens</u> motion) must evaluate both the convenience of the parties and various public-interest considerations.").

The analysis changes, however, when a valid forum-selection clause is before the court. Instead of applying the Fourth Circuit's four-factor test, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." <u>Atl. Marine</u>, 134 S. Ct. at 581. Indeed, "[o]nly under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." <u>Id.</u>

"The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." <u>Id.</u> First, a court must give the plaintiff's choice of forum no weight. Usually, a plaintiff's choice of forum is granted significant deference, and a party seeking to transfer forums under Section 1404(a) "bears the burden of demonstrating that the balance of convenience among the parties and the witnesses is strongly in favor of the forum to which transfer is sought." <u>Koh v. Microtek Int'l, Inc.</u>, 250 F. Supp. 2d 627, 633 (E.D. Va. 2003) (emphasis omitted) (quoting <u>Medicenters of Am., Inc. v. T. & V. Realty &</u> <u>Equip. Corp.</u>, 371 F. Supp. 1180, 1184 (E.D. Va. 1974)). But when a plaintiff defies a valid forum-selection clause, "the plaintiff's choice of forum merits no weight." <u>Atl. Marine</u>, 134 S. Ct. at 581. Instead, it is now the plaintiff who "bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." <u>Id.</u>

Second, a court may not "consider arguments about the parties' private interests." <u>Id.</u> at 582. "When parties agree to a forum-selection clause, they waive the right to challenge the

preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." Id. Instead, a court may only consider "public-interest factors," which will "rarely defeat a transfer motion." Id. Public-interest factors may include:

> the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1981); see also Atl. Marine, 134 S. Ct. at 581 n.6 (noting Piper Aircraft factors apply). Other courts include judicial economy in the mix. See, e.g., In re Howmedica Osteonics Corp. (Howmedica II), 867 F.3d 390, 402 n.7 (3d Cir. 2017) ("[W]e acknowledge judicial economy considerations to be a distinct, cognizable public interest."). "Because these factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in usual case." Atl. Marine, 134 S. Ct. at 582. These "cases will not be common." Id.

Third, unlike in most situations, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." Id.

## B. Application

As the court has already determined that the Forum-Selection Clause is enforceable, the application of Atlantic Marine is straightforward: The court must enforce the Forum-Selection Clause and transfer the Consolidated Action to the District of Nebraska unless WCC can demonstrate that public policy factors attendant to the Consolidated Action constitute the "extraordinary circumstances" required to disregard a forum-selection clause.

As the court concludes that WCC has failed to make that showing, the court will transfer the Consolidated Action to the District of Nebraska.

## 1.     Venue and Forum Selection

WCC makes several arguments to avoid this outcome, each of which fails. First, WCC argues that "forum selection clauses are not enforceable when they establish a forum in which venue does not exist under 28 U.S.C. § 1391(b)." Opp. at 4. WCC appeals to Howmedica I, Corporate Air, and Prosperity Bank. WCC claims that in each of these cases, a court disregarded an otherwise valid forum-selection because venue was not proper in the district prescribed by the forum-selection clause.

This argument misses the point. Through its briefing and at oral argument, WCC conflates proper venue under Section 1391(b) with the change-of-venue analysis under Section 1404(a). Section 1391(b) and Section 1404(a) ultimately require different analyses, and the absence of proper venue under Section 1391(b) does not preclude the court from invoking Section 1404(a) to transfer the Consolidated Action to the District of Nebraska.

As discussed above, Section 1391(b) prescribes proper venue in civil actions. Notably, Section 1391(b) makes no provision for forum-selection clauses. See Atl. Marine, 134 S. Ct. at 577. For this reason, venue is proper when the requirements of Section 1391(b) are met, "irrespective of any forum-selection clause." Id. at 578.

The outcomes of Howmedica I and Prosperity Bank naturally flow from this conclusion. In Howmedica I and Prosperity Bank, the party seeking to establish proper venue in a federal district "assert[ed] that venue [was] proper under Section 1391" because a binding forum-selection clause required all disputes to be filed in that district. Howmedica I,

2017 WL 1136671, at *3; see also Prosperity Bank, 2014 WL 1023935, at *3. Both courts followed Atlantic Marine and found that Section 1391(b), not the forum-selection clause, governed proper venue. See Howmedica I, 2017 WL 1136671, at *3; Prosperity Bank, 2014 WL 1023935, at *3. Because venue was not proper under Section 1391(b), the courts transferred the actions to a district where venue was proper. See Howmedica I, 2017 WL 1136671, at *5–6; Prosperity Bank, 2014 WL 1023935, at *3. In fact, this is the same analysis that the District of Nebraska followed when it transferred the Nebraska Action to this court.[10]

Howmedica I, Prosperity Bank, and the Nebraska Action were in a different procedural posture than the Consolidated Action is now. There is no dispute that venue is proper under Section 1391(b) in this district. That leads to the application of Atlantic Marine, which requires analysis under Section 1404(a). Under Section 1404(a), a court may transfer an action to another court "even though venue is proper in the court in which the plaintiff brought the action." 17 Moore's Federal Practice § 111.11.

Atlantic Marine makes clear that Section 1404(a) "permits transfer to any district where venue is also proper . . . or to any other district to which the parties have agreed by contract or stipulation." 134 S. Ct. at 579; see also U.S.C. § 1404(a). Section 1404(a) is disjunctive: The court may transfer the Consolidated Action to the District of Nebraska if either: (1) venue is proper in the District of Nebraska under Section 1391(b); or (2) the

---

[10] In Corporate Air, plaintiff filed suit in the Western District of Pennsylvania, and defendants moved to dismiss or transfer for improper venue. 2014 WL 516582, at *1. Notably, defendants wanted the court to transfer the case to the District of South Carolina, which was not the venue specified in the forum-selection clause. Id. Since no party in Corporate Air sought to enforce the forum-selection clause, the case is inapposite.

parties agreed in a valid forum-selection clause that the District of Nebraska was the only appropriate forum in which the Consolidated Action should be heard.

The court has already determined that the Forum-Selection Clause is valid and requires any dispute to be brought in Douglas County, Nebraska. Under Atlantic Marine, this is sufficient to transfer the case to the District of Nebraska under Section 1404(a); contrary to WCC's argument, the fact that venue was not proper in the District of Nebraska under Section 1391(b) is simply not relevant.

### 2. Private-Interest Factors

WCC next argues that its "choice of forum merits maintaining the case in Virginia" because of the convenience of the parties and witnesses. Opp. 11. WCC claims that "witnesses should not be required to travel to Nebraska at great expense and inconvenience merely to allow G4S' corporate officers to be closer to their own offices." Id. at 13. By doing so, WCC asks the court to engage in the usual Section 1404(a) private-interest analysis.

WCC's proffered analysis is foreclosed by Atlantic Marine. While WCC is correct that WCC's choice of forum would usually merit substantial deference, see Koh, 250 F. Supp. 2d at 633, the court has already held that the Forum-Selection Clause is valid. For that reason, WCC's "choice of forum merits no weight." Atl. Marine, 134 S. Ct. at 581. Instead, WCC "must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." Id. at 582.

What's more, WCC's appeal to private-interest factors—the convenience of the parties and the witnesses—is irrelevant. The court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." Id. The court is not allowed to delve into

the debate about which forum would be more convenient and less costly for the parties. Instead, in the Forum-Selection Clause, the parties pre-decided that issue in favor of Nebraska. Accordingly, the court "may consider arguments about public-interest factors only." Id.

### 3.    Public-Interest Factors

WCC's public-interest argument mainly relies on Section 8.01-262.1(A). As discussed above, Section 8.01-262.1(A) must give way to Albemarle and cannot invalidate the Forum-Selection Clause. The Fourth Circuit decided Albemarle in the context of The Bremen, which held that "[a] contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which the suit is brought." The Bremen, 407 U.S. at 15.

Atlantic Marine further circumscribes the circumstances in which a court may disregard a valid forum-selection clause. Instead of a vanilla "strong public policy" threshold under The Bremen, id., Atlantic Marine requires the court to find a strong public policy of the forum sufficient to constitute "extraordinary circumstances" or an "exceptional factor[]," Atl. Marine, 134 S. Ct. at 581. WCC "must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer." Atl. Marine, 134 S. Ct. at 583. If a state forum-selection statute cannot constitute a "strong public policy of the forum" under the more lenient The Bremen standard, it necessarily follows that the same statute cannot constitute "extraordinary circumstances" under Atlantic Marine.

WCC's primary argument revisits Section 8.01-262.1(A). The court has surveyed cases applying Atlantic Marine and found a dearth of cases in which public-policy factors

constituted the "extraordinary circumstances" necessary to justify ignoring a valid forum-selection clause. Certainly, none of the cases suggests that a state forum-selection statute may constitute those "extraordinary circumstances." See, e.g., Zutz v. Scottsdale Models, LLC, No. 15-cv-2453 (MJD/TNL), 2016 WL 1019393, at *6 (D. Minn. Jan. 26, 2016) (rejecting argument that Minnesota Franchise Act, which purports to bar certain forum-selection clauses, overrides Atlantic Marine); KNL Constr., Inc. v. Killian Constr. Co., No. 3:14-CV-412-UN2, 2014 WL 1671959, at *3 (M.D. Pa. Apr. 28, 2014) (finding, in the context of Atlantic Marine analysis, that Pennsylvania forum-selection statute does "not represent a compelling public policy interest of Pennsylvania"). In fact, on remand, the plaintiff in Atlantic Marine argued that a similar Texas statute supplied the extraordinary circumstances, which the district court summarily rejected. Order at 2, United States ex rel. J-Crew Mgmt., Inc. v. Atl. Marine Constr. Co., No. A-12-CV-228-LY (W.D. Tex. Mar. 19, 2014).

Cases that find that public-interest factors weigh so strongly against the forum-selection clause to constitute "extraordinary circumstances" have almost universally based their holding on judicial economy. These courts reason that "the need—rooted in the valued public interest in judicial economy—to pursue the same claims in a single action in a single court can trump a forum-selection clause." In re Rolls Royce Corp., 775 F.3d 671, 677 (5th Cir. 2014); see, e.g., In re Bavaria Yachts USA, LLLP, 575 B.R. 540, 557–58 (Bankr. N.D. Ga. 2017) (finding that litigating dual cases in the United States and Germany was so inefficient and time consuming to constitute an extraordinary circumstance)[11]; Ashley

---

[11] The Bavaria Yachts court also found that the financial status of the party seeking to avoid a forum-selection clause was so tenuous that it was "probably impossible" that they could litigate in Germany, the designated forum. Bavaria Yachts, 575 B.R. at 557. The court held that the party "will realistically lose its day in court because it cannot afford" to

Furniture Indus., Inc. v. Packaging Corp. of Am., --- F. Supp. 3d ----, 2017 WL 3207061, at
*6 (W.D. Wis. July 28, 2017) (holding that "public interest factors favoring all members of
an alleged conspiracy to restrain trade be judged in one lawsuit" sufficient to overcome
Atlantic Marine).[12] Other courts have rejected this argument, finding that "[c]onsiderations
of judicial economy alone do not permit this Court to ignore a 'presumptively valid' forum
selection clause." Global Quality Foods, Inc. v. Van Hoekelen Greenhouses, Inc., No. 16-
cv-00920-LB, 2016 WL 4259126, at *5 (N.D. Cal. Aug. 12, 2016) (quoting Premiere Radio
Networks, Inc. v. Hillshire Brands, Co., No. CV 12-10199 CAS (PJWx), 2013 WL 5944051,
at *3 (C.D. Cal. Nov. 4, 2013)).[13] To the extent that WCC contends that judicial economy
favors the court retaining the case, it is mooted by the court's order consolidating the
competing cases.

The court recognizes that one case, Community Voice Line, L.L.C. v. Great Lakes
Communication Corp., No. C. 12-4048-MWB, 2014 WL 3102124 (N.D. Iowa July 4, 2014),
considered two additional factors when refusing to transfer a case notwithstanding a valid
forum-selection clause. The valid forum-selection clause required disputes to be litigated in
Maryland, while plaintiff attempted to keep the suit in Iowa. Id. at *1. Alongside judicial
economy, Community Voice Line found that "the local interest in having localized
controversies decided at home" and "burdening citizens in an unrelated forum with jury

litigate in Germany. Id. at 558. There is no suggestion that WCC is so cash strapped that litigating in Nebraska would
effectively deprive it of its day in court.

[12] See also Axis Oilfield Rentals, LLC v. Mining, Rock, Excavation & Constr., LLC, Civ. No. 14-1627, 2015 WL
5774801, at *6 (E.D. La. Sept. 30, 2015); Bollinger Shipyards Lockport, L.L.C. v. Huntington Ingalls Inc., Civ. No. 08-
4578, 2015 WL 65298, at *4 (E.D. La. Jan. 5, 2015).

[13] See also Black v. Sprouts Farmers Market, Inc., No. 15-cv-01297-REB-MJW, 2015 WL 7351511, at * n3.2 (D. Colo.
Nov. 19, 2015); PNC Bank, N.A. v. Akshar Petrol., Inc., No. 3:13-cv-436-J-34-PDB, 2014 WL 1230689, at *7 (M.D. Fla.
Mar. 25, 2014).

duty" both weighed heavily in favor of disregarding the forum-selection clause. Id. at *4–5 (quoting Piper Aircraft, 454 U.S. at 241 n.6). With respect to local interests, Community Voice Line determined that the controversy was "'localized' to Iowa" and the "nexus of all the parties' interactions is also clearly in Iowa." Id. at *4. Similarly, with respect to jury service, Community Voice Line held that keeping the case in Iowa meant that "no citizens in an unrelated forum would be burdened with jury duty." Id. at *5.

The court respectfully rejects Community Voice Line's analysis. Community Voice Line's local-interest analysis is impossible to reconcile with Atlantic Marine. In the latter, the district court found that, save for the location of Atlantic Marine's records, the locus of events underlying the action rested wholly in the Western District of Texas. J-Crew Mgmt., 2012 WL 8499879, at *7. Despite this holding, Atlantic Marine found that "no public-interest factors that might support the denial of Atlantic Marine's motion to transfer are apparent on the record before us." 134 S. Ct. at 584. If Community Voice Line's analysis were consistent with Atlantic Marine, the court would expect the Supreme Court to have found some indicia of a public-interest factor from the record.

Similarly, the court finds that adopting Community Voice Line's position on jury service in different venues would vitiate Atlantic Marine in many cases. Many designated forums bear otherwise tenuous connections with the locus of events underlying an action. Allowing jury service to constitute an extraordinary circumstance would permit courts to deviate from forum-selection clauses on a frequent basis, contrary to Atlantic Marine's command that a forum-selection clause "should control except in unusual cases." 134 S. Ct. at 582.

With this analysis in mind, WCC fails to approach the showing that "extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." Section Section 8.01-262.1(A) does not constitute a strong public policy sufficient to overcome Atlantic Marine, nor does the attenuated connection between Nebraska and the activities underlying the Consolidated Action support denying the motions to transfer. WCC's appeal to judicial economy is also unavailing, as the competing cases have been consolidated and the court has yet to rule on any substantial motion in the Consolidated Action, other than the motions to transfer currently in front of the court. Under these facts, Atlantic Marine requires the court to transfer the Consolidated Action back to Nebraska.

## B. Personal Jurisdiction

Even though the court has determined that the Consolidated Action should be transferred to the District of Nebraska under Atlantic Marine, the court cannot effect that transfer unless the District of Nebraska can exercise personal jurisdiction over all defendants. See Eaglewood Consulting, LLC v. Graphic Packaging Int'l, Inc., No. 2:10cv125, 2010 WL 14470424, at *1 (E.D. Va. Oct. 25, 2010).

Virginia law, to the extent it otherwise would have applied, does not transfer to the District of Nebraska because WCC sought to evade the Forum-Selection Clause. See Atl. Marine, 134 S. Ct. at 582. When assessing whether personal jurisdiction exists over a nonresident defendant, jurisdiction must be authorized by [the state's] long arm statute and the defendant must have sufficient minimum contacts with the forum state to satisfy due process." Downing v. Goldman Phipps, PLLC, 764 F.3d 906, 911 (8th Cir. 2014). As such, the court will examine personal jurisdiction under Nebraska and Eighth Circuit law.

"[W]here the exercise of personal jurisdiction is based upon a contractual choice of forum clause and is challenged on due process grounds," the court "must determine whether the choice of forum clause at issue satisfies the requirements of the Choice of Forum Act and the Due Process Clause." Ameritas Inv. Corp. v. McKinney, 269 Neb. 564, 572 (2005). The Choice of Forum Act provides:

> If the parties have agreed in writing that an action on a controversy may be brought in this state and the agreement provides the only basis for the exercise of jurisdiction, a court of this state will entertain the action if (a) the court has power under the law of this state to entertain the action; (b) this state is a reasonably convenient place for the trial of the action; (c) the agreement as to the place of the action was not obtained by misrepresentation, duress, the abuse of economic power, or other unconscionable means; and (d) the defendant, if within the state, was served as required by law of this state in the case of persons within the state or, if without the state, was served either personally or by certified mail directed to his last-known address.

Neb. Rev. Stat. § 25-414(1). As long as a forum-selection clause "meets the Choice of Forum Act's requirement that Nebraska be a 'reasonably convenient place for the trial of the action," the forum-selection clause "will also satisfy the Due Process Clause requirement that the trial of the action in Nebraska not be so gravely difficult and inconvenient that the party challenging the clause will be deprived of his or her day in court." Ameritas Inv., 269 Neb. at 572; see also Dominium Austin Partners, L.L.C. v. Emerson, 248 F.3d 720, 726 (8th Cir. 2001) ("Due process is satisfied when a defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause.").

Neither G4S nor Liberty Mutual suggests that they are not subject to personal jurisdiction in the District of Nebraska. Additionally, in the Nebraska Complaint, G4S pled that Ironshore was subject to personal jurisdiction in Nebraska because it "is registered with the Nebraska Department of Insurance and, upon information and believe, regularly

conducts business in Nebraska." Neb. Compl. ¶ 4. Similarly, in WCC and Ironshore's Motion to Dismiss in the Nebraska Action, Ironshore did not argue that it was not subject to personal jurisdiction in Nebraska. The only party that may contest personal jurisdiction in Nebraska is WCC.

Of course, WCC has been designated the lead plaintiff in the Consolidated Action, and lack of personal jurisdiction only implicates a defendant in an action. See 16 Moore's Federal Practice § 108.02[1] ("If the defendant personally has an appropriate connection with the state, the court may exercise personal jurisdiction over the defendant."). Lack of personal jurisdiction would therefore only implicate G4S' consolidated counterclaim against WCC.

The court has already noted that G4S' consolidated counterclaim is a compulsory counterclaim, as "it arises out of the transaction or occurrence that is the subject matter of" WCC's complaint. Sue & Sam Mfg. Co. v. B-L-S Constr. Co., 538 F.2d 1048, 1050 (4th Cir. 1976); see also Tullos v. Parks, 915 F.2d 1192, 1195 (8th Cir. 1990). WCC chose to prosecute its complaint— and the court has determined that it must be heard in the District of Nebraska. Since WCC "chose to initiate the litigation enabling [G4S's] counterclaim" and contractually obligated itself to litigate in Nebraska, WCC "has in no sense been [hailed] into" the District of Nebraska "against [its] will to defend [it]self." Morrow v. Vertical Doors Inc., No. CV 09-0256-PHX-DGC, 2009 WL 1698560, at *2 (D. Ariz. June 17, 2009) (internal quotations omitted) (quoting Murray v. Scott, 176 F. Supp. 2d 1249, 1256 (M.D. Ala. 2001)). Indeed, a contrary result would be inequitable: If WCC "could successfully assert lack of personal jurisdiction as a defense" to G4S' counterclaim, G4S, "while still

required to defend in the original action, would have to forfeit [its] claims arising from the same transaction." Grupke v. Linda Lori Sportswear, Inc., 174 F.R.D. 15, 18 (E.D.N.Y. 1997). Courts will not countenance that inequity. See id. at 18–19.

In any event, the court concludes that personal jurisdiction in the District of Nebraska lies as to WCC by virtue of the Nebraska Choice of Forum Act and the Supreme Court of Nebraska's decision in Ameritas Investment. To be sure, G4S will "bear[] the burden of demonstrating personal jurisdiction at every stage following such a challenge." Grayson v. Anderson, 816 F.3d 262, 267 (4th Cir. 2016); see also Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG, 646 F.3d 589, 595 (8th Cir. 2011). At this nascent stage of litigation, however, G4S may satisfy that burden by making "a prima facie showing" that the District of Nebraska is a "reasonably convenient place for the trial of the action." Ameritas Inv., 269 Neb. at 575.

The Nebraska Supreme Court instructs:

> the question is not whether Virginia would be a better place for this action to be tried. The question is whether or not Nebraska would be a "reasonably convenient" place for the trial of the action or, in other words, whether Nebraska would be a place so substantially inconvenient that [the court] should disregard . . . the parties' previous agreement that suits arising from [the Subcontract] would be tried in Nebraska.

Id. at 576.

When analyzing this standard the Nebraska Supreme Court has instructed trial courts to examine if one or more of the parties' offices are located in Nebraska, if some relevant records are located in Nebraska, and if the contract calls for the application of Nebraska law. See id. at 575. Further, the fact that primary witnesses are not located in, and could not be compelled to testify in, Nebraska does not compel a finding that Nebraska is not reasonably

convenient. See id. ("[O]n a rule 12(b)(2) motion, it is premature to conclude that the complainant's presumed unavailability in a Nebraska courtroom would produce oppressiveness and vexation to [the] defendant . . . out of proposition to plaintiff's convenience." (alterations in original) (internal quotations omitted) (citing Am. Dredging Co. v. Miller, 510 U.S. 443, 447–48 (1994). When weighing the factors, like Atlantic Marine, the choice of Nebraska "forum should rarely be disturbed." Id.

The court believes that, at this stage of the litigation, G4S will be able to make that prima facie showing. G4S is headquartered in Nebraska, and assumedly many of its records are located there. The Subcontract calls for the application of Nebraska law. Finally, the parties agreed that any dispute would be litigated in Nebraska. The fact that some witnesses might not be in Nebraska does not require an opposite conclusion, at least at the early stage of litigation. Accordingly, the court finds that the District of Nebraska can properly exercise personal jurisdiction over all defendants.

## C.    A Note on Judicial Economy

The court has determined that Atlantic Marine requires the court to transfer the Consolidation Action back to Nebraska. On its face, this seems to be an odd result. After all, the District of Nebraska just transferred the Nebraska Action to this court. Transferring the Consolidated Action back to the District of Nebraska seems to violate Section 1404's remedial purpose: "to prevent the waste of 'time, energy, and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (quoting Cont'l Grain Co. v. Barge F.B.L.—585, 364 U.S. 19, 26, 27 (1960)); see also 17 Moore's Federal Practice § 111.11. Yet, the District

of Nebraska recognized the possibility that the court might transfer the case back. See G4S Tech., 2017 WL 4564726, at *3 (noting that this court "will be in a better position to determine whether a further transfer of the case is appropriate").

To be sure, the court agrees with Howmedica I and "does not believe that the Supreme Court intended" the ping-pong transfers between this district and the District of Nebraska. Howmedica I, 2017 WL 1136671, at *6 n.6. The inefficient transfers have "result[ed] in a waste of time, resources, and money for the parties and the judiciary." Id. But this is the result the court believes the Supreme Court has mandated. The court is constrained to explain why it thinks that its holding is dictated by Atlantic Marine.

Unlike the procedural posture confronted by the District of Nebraska, Atlantic Marine is directly on point here. Like in Atlantic Marine, venue is proper in this district. And like in Atlantic Marine, there is a valid forum-selection clause. Atlantic Marine requires this court to enforce the Forum-Selection Clause via G4S' motion to transfer under Section 1404(a), resulting in a transfer of the Consolidated Action back to the District of Nebraska. This outcome rests solely on the disparity between Section 1391(b) and Section 1404(a). If the parties' contractual decision to select a forum could establish venue under Section 1391(b), venue would have been proper in Nebraska at the outset, and much of the resultant inefficiencies would be ameliorated. Ultimately, however, it is Congress' job to harmonize Section 1391(b) and Section 1404(a).

## VI.  Conclusion

All other factors equal, this case belongs in this district. But the parties contractually obligated themselves to litigate in a court in Douglas County, Nebraska. The court cannot

and will not disturb the parties' contractual bargain. The court will <u>sua sponte</u>

**CONSOLIDATE** this action with the Nebraska Action. The court will **GRANT** the

motions to transfer under Section 1404(a) and **DENY AS MOOT** the motion to stay.

Finally, the court will **DENY WITHOUT PREJUDICE** the motions to dismiss, which

may be renewed in front of the District of Nebraska. An appropriate order will follow.

Entered: *12/15/2017*

*/s/ Michael F. Urbanski*

Michael F. Urbanski
Chief United States District Judge